No. 13,313.

## THE FRANKLIN AND ABBEVILLE RAILROAD COMPANY vs. ARISTIDE L. MONNOT.

### SYLLABUS.

1. The mere fact that a switch with a building with platforms and ramps, was constructed on a plantation by a railroad corporation, to whom the owner of the property had granted a right of way for tracks, turnouts, and a station house, and that the buildings, platforms and ramps were used by the owner and the neighboring planters for loading cane upon the cars, does not

establish necessarily the fact that the switch and buildings were those contemplated by the grant of the right of way.

2. A claim to that effect is repelled by evidence showing that they were placed there while the property was the temporary *terminus* of the road, that they were used by the owner of the property for loading his own cane, and the use of the same by others was permissive, and by indulgence, that the railroad's track crossed the public road as it entered, and, also, as it left the property, and that to reach this particular building from the public road, a right of passage on to the plantation, not granted by the act, but claimed as an incident of the grant, would have to be conceded to the general public.

APPEAL from the Twenty-fourth Judicial District Court, Parish of St. Mary—*Allen, J.*

*Philip H. Mentz* and *Guy M. Hornor* for Plaintiff, Appellant.

*Milling & Sanders, John B. Roberts,* and *Foster & Broussard* for Defendant, Appellee.

## STATEMENT OF THE CASE.

The opinion of the court was delivered by

NICHOLLS, C. J. The plaintiffs alleged that by act under private signature of date of the 26th May, 1890, duly recorded, they acquired a servitude or right of way for the railroad they were then contemplating building and which they had since built, on and through certain described property in the parish of St. Mary, from John Murphy and the children of James Murphy; that said right of way as then granted and accepted and since used was fifty feet in width or twenty-five feet on either side of the centre line of their railroad track, and was in perpetuity; that by the same act they acquired the right of way and site for a double track, turnouts, and a station house, this right being also in perpetuity, and that as a necessary adjunct to said railroad they erected on the said land a station house with the usual ramp and platform, as well as a railroad switch and turnout for switching cars, all of which constructions had been actually used by them since they were placed on the land; that said railroad track being thus placed on said land and said station house and adjuncts being there erected in order to make same available, and useful for the purpose for which they were granted and accepted, and especially that freights might be delivered to the cars of said company, at said sta-

tion, and the same being all enclosed by the lands of the grantors, it became necessary and it was their right to have a passage from the public road which ran south of and parallel, or nearly so, with the railroad, and at about one hundred feet distant from the said track to the railroad at said station, and that the servitude of passage being thus legally due over the land between the public road and said railroad, was acquiesced in by the owners of said land and used by the plaintiffs and those delivering freight to plaintiffs, for the purpose already stated; that two gates were erected upon the boundary line of said land separating said land from the public road to permit the entrance and exit of teams hauling freight to said station houses for such railroad, and that these entrances and said servitudes have been used frequently and as their business required by plaintiffs, and those dealing with it and during the last six years past; that plaintiffs and their grantors selected and laid out the ground over which the passage to and from should be exercised, and located the places where the gates should be put, and they thereby fixed said route and the manner of using said right; that their grantors permitted and directed the hauling of cane raised on their said land to said railroad, through the passage described from the public road to the railroad, they having an interest in the said cane, it having been raised on said land either by themselves, or by other persons for them, or by persons who paid them for the use of the land; that they in all such cases derived a benefit for the use by themselves of said right of passage; that plaintiffs' grantors had directed and assisted third persons in using said passage; that no right of passage would be useful or possible to the company unless over same route outside of the right of way already occupied by the railroad; that in 1897 the owners of said land sold to defendant a portion of said land (which plaintiffs described as that on which the said railroad and other tracks and the station house were erected), and that he had closed the gates for the purpose of preventing and was preventing the plaintiffs from using the said servitude of passage over said land from the public road to said railroad and station house; that defendant having purchased said property after said grant and the recording of the same, was estopped from contesting the right of way, and legally compelled to permit the exercise of the same.

In view of the same plaintiffs prayed that a mandatory injunction issue to defendant commanding him to remove that portion of the fence on the southern boundary line of the land acquired by him from

NEW ORLEANS, MARCH, 1900. 1029

The Franklin and Abbeville Railroad Co. vs. Monnot.

plaintiffs' grantors as well as all other obstructions that he had erected in the form of gates or otherwise, which prevent or impede the exercise of the said right of passage over the route and at the place where it had been exercised, and that it be decreed that said right óf passage might be exercised by all persons having business with plaintiffs, and those who might wish to deliver freight to its cars, or to take freight therefor, and to all persons who might wish to get on or off their cars at said place, and that plaintiffs recover judgment for one thousand dollars damages.

A preliminary injunction having issued, the same was, on defendant's application, dissolved on bond.

Defendant answered pleading an amplified general denial, and praying for damages as for an illegal and malicious injunction.

The District Court rendered judgment in favor of defendant and against plaintiffs, dissolving the injunction taken out and according defendant one hundred and fifty dollars as damages, for the issuance of the same, also rejecting plaintiffs' demand and dismissing their suit.

Plaintiffs appealed.

Defendant moved that the judgment be amended by increasing the damages granted to him.

After the case was submitted, defendant moved the dismissal of the appeal upon the ground that since this appeal was taken, the plaintiffs, through their agents, have torn up and carried away the switch track, at their Murphy switch (the switch on the land referred to in the present litigation), torn down and carried away the platform, ramp, and all other structures used for loading cane and other freight, and that there was nothing now left except a small house about twelve by fourteen feet, which was entirely abandoned, having no steps to same and no method of access thereto; that it had entirely abandoned the switch as a place of loading cane or receiving, forwarding or delivering freight, and had no station house there, except the wreck of a house above referred to, which was entirely abandoned, and not used by the plaintiffs; that plaintiffs had acquiesced in the judgment appealed from.

Attached to the motion to dismiss is an affidavit of defendant's attorneys that these facts came to their knowledge only after the submission of the cause in the Supreme Court.

The plaintiffs are a public railroad corporation organized under the laws of Louisiana. Prior to organizing, they acquired rights of way evidenced generally by instruments similar to the one filed in this litigation.

The act declared upon declares that the right of way is given for and in consideration of the advantages, benefits, and conveniences accruing to the grantors, and as neighbors, and of the probable ehancement of the grantor's adjoining lands of the railroad.

The right of way was granted over and across certain described property and was itself described as "fifty feet in width or twenty-five feet on each side of the centre line of the railroad, as the same is now located and constructed, or may be finally located and constructed by said company, its successors, or assigns, over, across, or through said above described land, and the grant of right of way shall be in perpetuity, or so long as it is used for the purposes of a railroad; further the right of way to all timber that may fall upon the line of said railroad.

The right of way or any additional quantity of land than the fifty feet mentioned which might be used for a double track, side track, turnouts, or station houses, also granted."

The road contemplated was built which the right of way was granted for. It enters upon the land on which the right of way was given, from the east from a public road which, running at that point north and south, separates the Murphy tract from the lands of Dumartrait, crosses the Murphy land in an easterly and westerly direction, crosses the same public road at a second point to the west and passes over to the lands of Landry and others. The public road referred to, after running southward two hundred and fifteen feet from the point where the railroad track crosses it on the eastern boundary of the Murphy tract, next the Dumartrait lands, turns to the west, and running in a northerly direction, gradually approaches and is finally crossed a second time by the railroad track, on the west as has just been stated. The Murphy lands extended both north and south of this public road.

During the course of the construction of the railroad, its temporary western terminus was for a very considerable time, upon the Murphy property, and while matters were in that situation the railroad company constructed to the south of their track, a short curved turnout switch on the Murphy property, that is to say, a switch which leaving the track on the east, curved first to the south and west, and then to the north and west, shifting the track again.

About the middle of this curved switch the railroad constructed what is spoken of in the testimony, as the Murphy platform, and station house and ramps. The Murphy land between the railroad track and the public road to the south, was at that time, not fenced in.

The Murphys were planters cultivating cane, by themselves and through tenants for sale to other parties. They hauled their cane to this station house for shipment, the loading being by hand. The planters in the neighborhood did likewise, selecting as they pleased, the points at which they crossed from the road to the station house.

In course of time the Murphy land was fenced, but a lane was left leading from the public road to the station with a gate at the end, next to the public road. Cane was continued to be hauled by the Murphys and their neighbors through this lane, but about 1896 the railroad company having obtained permission from Landry, who owned the property to the west of the Murphys, to put up a station house, with a derrick and hoist on his land and next the public road spoken of, the use of the Murphy station and platform and ramps was discontinued and has not been resumed since.

On the 24th of March, 1897, the Murphys sold to the defendant, Monnot, one hundred arpents of their land, in which was included the portion of the same between the railroad track and the public road.

The act of sale made no allusion to a servitude in favor of the plaintiff company.

The present suit was filed on the 16th day of October, 1897.

## OPINION.

The plaintiffs claim no right other than that which results from the act granting the right of way. Their position is that the station house, platform, and ramps and the curved turnout switch, were constructed as those mentioned in and contemplated in the grant of the right of way; that they were first located and afterwards used with the acquiescence and consent of the owners of the land; that in the situation in which they were they would be perfectly useless unless they could be reached by access from the public road in the immediate neighborhood; and that the only means of access to the same, was through the gate and lane already mentioned, and that a right of passage through the same, passed to the corporation as an incident of the grant to it. Plaintiffs rely very greatly upon the decision of this court in Patout vs. Lewis, reported in 51 Ann., 210.

We do not attach to the construction and use of the switch, platform, station house, and ramps, the same probative force that the plaintiffs claim for them. There is nothing going to or tending to · show that they were constructed under the grant of right of way. When constructed the Murphy land was the temporary *lerminus* of the road and that fact must not be lost sight of in the considering of their character and purpose. The Murphys themselves were planters and hauling cane, and there is nothing to indicate that the buildings and switch were for other purposes than the use and convenience of the owners of the land, except the fact that the neighborhood planters used them for the time being.

John Murphy, one of the owners, testified that this use was simply permissive for the time being, and through indulgence, and that he exercised at the time his right and power of excluding persons from the property.

All the probabilities point to the truthfulness of this statement, which was not attempted to be controverted. The disuse of the platform and building as the railroad track was constructed further on and the establishment of the station, the platform, the derrick and hoist, on the Landry property, a few hundred feet to the west at the junction of the railroad track with the public road, confirm Murphy's declaration, and satisfy us that the works on the Murphy land were not placed there for more than temporary use of the Murphys and such persons as they might authorize to take advantage of them, so long as the terminus of the road was on that property.

The company never had a freight agent or officers at the building and it was in no sense a depot.

Plaintiffs are besides in error in stating that access to this platform and building was only through the gate and lane referred to in the pleadings.

Access to the public road was easy, by persons passing either to the east or west, alongside of, and parallel to their track, where the latter struck the public road.

It is exceedingly improbable that the owners of the land would have consented to a location of a station house at any place other than one of those two points, that they would have permitted, under the circumstances, their plantation to be cut into and traversed by a public road, over the use of which they would have lost control, with no resulting benefit either to themselves or to the public. The facts in

the Patout case were entirely different from those of the case at bar.

The road, for which a right of way was granted, in the case cited, by Lewis, was a tramway avowedly to be utilized by the parties in whose favor the grant was given, in aid of their transportations over it of cane purchased not only from Lewis, but from all the neighbors.

The grant of right of way was not only for the main track of the road but for a particularly described spur switch, which was provided for to diverge from the main track, and to terminate with a dumping ground attached thereto and on a public road running perpendicularly to the main track.

The real matter in dispute in that case was, whether, in view of the obvious object and purpose of this spur switch, and of the dumping ground unmistakably intended for use by the general public, the owner could legally bar entrance to the dumping ground through the boundary fence. We held he could not.

Allusion was made in the opinion to what would have been the situation had the location of the road been such as to fall a few inches or a few feet inside of the boundary line.

The necessities of the case did not call for this expression of opinion, for the dumping ground terminated directly upon the public road.

The conditions under which the plaintiffs seek to have a right of passage in their favor recognized, from the public road to the platform and station building on the Murphy tract, are entirely different, as we have stated, from those in the matter of the Patout right of way. There is no parallelism in the two cases.

Entertaining the view we do of the rights of the parties, we have not deemed it necessary to examine and take any action upon defendant's motion to dismiss.

For the reasons assigned, it is hereby ordered, adjudged and decreed that the judgment appealed from be and the same is hereby affirmed.